## HODGES v. COLE et al.

### No. 4906.

Court of Civil Appeals of Texas. Amarillo.

May 23, 1938.

Bean & Bean, of Lubbock, for appellant.

Wm. H. Evans, of Lubbock, for appellees.

STOKES, Justice.

On May 2, 1936, appellees, Clyde L. Brashear and Aubrey L. Cole, purchased from appellant, J. A. Hodges, a second-hand J. I. Case tractor and some other farm machinery, in payment for which they executed their note in the sum of $600 and secured it by a chattel mortgage upon the machinery and certain crops belonging to appellees. The note was due November 1, 1936, and this suit was filed by appellant to recover upon the note and foreclose the chattel mortgage lien.

Appellees answered by pleading the general issue and, specially, that the note and mortgage were procured by fraudulent representations made by appellant as to the condition and efficiency of the tractor. They alleged that appellant represented it to be in first-class condition and capable of performing satisfactory work and furnishing power to operate plows and cultivate as much as sixty acres of row-crops per day. They alleged that the tractor was not as represented, but was worthless and would not develop sufficient power to pull any sort of plow except in low gear, and that it would not operate in that manner more than two hours until it would develop heat to the extent that the machinery would re-fuse to work. They alleged complaints made at frequent intervals to appellant and futile efforts on his part to repair the tractor and put it in workable condition, and finally that, on a number of occasions, they tendered it back to him and requested cancellation of the note and chattel mortgage.

By a supplemental petition, appellant denied the allegations of appellees concerning representations made by him and the alleged worthless condition of the tractor, and alleged that appellees knew they were purchasing a second-hand tractor and that appellant was making no warranties or representations; but that appellees relied upon their own inspection and examination of the tractor; that they made no cash payment thereon, and knew it was worn and not in the condition of a new tractor, and that they assumed all responsibility in regard to its condition and efficiency. He alleged that he made certain repairs on the tractor and, in effect, that he did more than he was obligated to do to put it in condition to perform the services for which appellees had purchased it.

The case was submitted to a jury upon special issues and in answer to the questions propounded to them by the court, the jury found that appellant represented to appellees that the tractor was in good running condition and ready for ordinary use as a used tractor; that appellees relied upon the representations when they purchased it and that such representations were false. They found that appellees did not purchase the tractor upon their own judgment as to its efficiency; that they continuously offered to return the property to appellant during the time it was in their possession, and that such offers were at all times refused.

Based upon the verdict of the jury, the trial court rendered judgment in favor of appellees, and, appellant's motion for a new trial having been overruled, he perfected his appeal to this court and presents the case here upon two propositions.

His first contention is that the court erred in overruling his motion for a peremptory instruction because the uncontradicted evidence shows that if appellees ever had a right to rescind the contract, they waived it by their subsequent actions and conduct, which amounted to an affirmance of the contract.

The acts and conduct of appellees upon which appellant relies to estab-

lish this contention are that, after they had been informed by appellant he would not accept a rescission of the contract or permit them to return the tractor and surrender their note, they continued to use the tractor in cultivating their crops and in planting wheat in the fall. The evidence does not disclose the tractor was used to any extent in planting wheat in the fall, and there is ample evidence in the record to support the claim of appellees that during all the time between May 2nd and July 7, 1936, when they attempted to use it in cultivating the growing crops, it was wholly incapable of performing the work for which it was purchased. There is testimony to the effect that it was not used more than two or three days during all that time and that appellant was continuously engaged in efforts to repair it and put it in such condition that it would perform the work for which it had been purchased. In answer to the tenth special issue the jury found that during all the time appellees had the tractor, they continuously offered to return it and the other machinery to appellant and there being evidence in the record to support this finding, we are without authority to disturb it even though we should find there was evidence to contradict it. It is shown by the evidence that appellant made numerous efforts to repair the tractor during the spring months and that the last effort was made about July 7, 1936. It is further shown that the tractor remained in the fields of appellees from that time until in November, when it was repossessed by appellant and that, when it was so repossessed, a wheat drill was attached to it. It is not shown, however, that the tractor was used to drill or plant wheat of any consequence in the fall and the fact that the drill was attached to it when it was repossessed was explained by appellees to the effect that Brashear made an effort to use it in planting his wheat in the fall but that it still would not develop sufficient power to draw the machinery being used to drill the wheat. The limited use which appellees made of the tractor was not, in our opinion, sufficient to constitute a waiver under the circumstances revealed by the record.

No question is raised as to the sufficiency of the evidence to support the findings of the jury that the alleged representations concerning the condition and efficiency of the tractor were made and that they were false and, the jury having found that appellees continuously offered to return the machinery to appellant during the time they had it, a peremptory instruction for appellant would not have been proper. Hubbs v. Marshall, Tex.Civ.App., 175 S.W. 716; Raby v. Sweetzer, 12 Tex.Civ.App. 380, 34 S.W. 779.

Appellant next contends that the burden was on appellees to establish their right to rescind the contract by showing that it was not inequitable for them to do so, and that the question of whether they had waived their right to rescind by using the tractor after they had discovered the falsity of the representations, and by thereafter making a payment on the note, the question of waiver by such use and payment should have been submitted to the jury. Appellant requested the submission of his special issue No. 4 by which the jury would have been asked if they found that appellees at all times after discovering the misrepresentations as to the condition of the tractor refused to make any payments on the note and refused any use of the tractor. What we have said disposes of the question of appellees' use of the tractor. The evidence shows, however, that in November, 1936, appellee Brashear made a payment of $40 on the note. Appellant contends that the making of this payment constituted a waiver of the right asserted by appellees to rescind the contract of purchase. There were no allegations in any of appellant's pleadings to the effect that such payment constituted a waiver. He contends, however, that it was encumbent upon appellees to allege facts and conditions which would excuse them from the consequences of such payment. We do not agree with appellant in this contention. Appellees pleaded, as a defense to the note, sufficient facts which, if true, entitled them to a rescission of the contract. They alleged representations of appellant to the effect that the tractor was in good condition and would do the work for which they were purchasing it; that such representations were false and that they had tendered the machinery back to appellant and requested him to cancel and deliver to them their note. If appellant relied upon acts and conduct of appellees which constituted a waiver of their equitable right of rescission, the duty devolved upon him, and not upon appellees, to allege and prove such facts. In this connection appellant cites us to the case of Powell v. Rockow, 127 Tex. 209, 92 S.W.2d 437. In that case it is said (page 439): "The Rockows came into a court asking it to undo their contract. In

order to be entitled to that relief, it was not enough that they merely established fraud, but the burden was upon them to disclose a situation that made it not inequitable to grant it."

The principle thus announced is well established, and if appellees in this case had done nothing more than merely establish fraud, they would not have been entitled to rescind the contract. The record shows, however, that not only in their pleadings but by ample testimony they went further and showed not only that a fraud had been perpetrated upon them, but that they continuously offered to return the machinery and place appellant in statu quo. When they did that, they met all the requirements of equity to entitle them to a rescission. They were not put to the necessity of proceeding further and pleading against all possible conditions under which they would not be entitled to rescind. In the cited case, the Rockows' own pleadings and evidence disclosed a condition under which they could not do equity by restoring their adversaries to their former condition. The lease upon the hotel involved had expired, and could not be returned; and the evidence showed they used the furniture and furnishings involved for more than a year after they discovered the fraud. No such conditions exist here. Appellees made a case by both pleading and proof in which, under the rules of equity, they were entitled to a rescission. If they had waived the rights asserted by them, such waiver was available to appellant as a defense. It was not material in any other respect and it is a well established rule of law that when waiver is relied upon it must be specially pleaded by the party who relies upon it. Even though it be established by proof, without objection, the rule is that no effect can be given to it in the absence of a pleading in which it is specially alleged. Moody & Co. v. Rowland, 100 Tex. 363, 99 S.W. 1112; Murchison v. Mansur-Tibbetts Implement Co., Tex.Civ.App., 37 S.W. 605; Ætna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S.W. 915; Scarbrough v. Alcorn, 74 Tex. 358, 12 S.W. 72; Carson v. Taylor, Tex.Civ.App., 238 S.W. 261; Fisher v. Russell, Tex.Civ.App., 204 S.W. 143.

As we have stated, the question of waiver was not pleaded by appellant. Brashear, who made the payment of $40, explained that he was in the act of removing from Lubbock County to another county in the state when a representative of appellant came to his place and, in conversation relative to the note, reminded Brashear that he had sold and disposed of some of the cotton upon which appellant had a chattel mortgage and told him that appellant wanted the money which Brashear had received for that cotton. He said that, rather than become involved in a law suit when he was on the verge of moving from the county, he paid to the representative of appellant the money he had received for the cotton covered by the mortgage and that was the only reason he did so. This is the only testimony in the record indicating the purpose of Brashear in making the payment and we think it fully answers the contention of appellant that such payment constituted a waiver. The common accepted definition of waiver is that it is an intentional release or relinquishment of a right that is at the time known to the party making it and is a voluntary act implying a purpose and intention to forego something of value or an advantage to which he had a legal right. It is true that a waiver may be implied from acts and conduct of the person charged with it but we find nothing in this case which indicates that Brashear, in paying the $40, had in mind any purpose or intention other than to relieve a situation in which he may become involved in a difficulty that would interfere with and delay his moving from the county. He had consistently declined to pay the note and the jury found he had, at all times while the machinery was in his possession, offered to return it to appellant. The contention of appellant that in making such payment, Brashear intended to waive his rights which had arisen under preceding relationships between them, in the absence of a showing that anything happened in the meantime which would be calculated to cause him to relent and recede from the consistent attitude he had theretofore maintained in reference to rescinding the transaction, is not persuasive. On the other hand, the reason given by Brashear for making the payment is entirely consistent and no issue having been made in the pleadings upon that question, we hold it was not only not necessary, but would not have been proper, for the court to submit the issue to the jury. Dale v. Simon, Tex. Com.App., 267 S.W. 467.

We have carefully examined all of the contentions made by appellant and the authorities cited by him in support thereof

and, believing the case was properly tried and that no error is revealed by the record, the judgment of the trial court is in all respects affirmed.