## ANDREWS v. POWELL.

### No. 6551.

Court of Civil Appeals of Texas. Texarkana.
Sept. 6, 1951.

Rehearing Denied Sept. 27, 1951.

W. Edward Lee, Tyler, for appellant

Beard & Flock, and Earle B. Mayfield, Jr., all of Tyler, for appellee.

LINCOLN, Justice.

This is an appeal from a judgment for damages in favor of appellee in a suit based on allegations of fraud in the execution of a contract of sale of real estate. Based upon the verdict of the jury and in deference to the trial court's judgment, we find the following facts are amply supported by the evidence:

Prior to March 27, 1946, appellant and appellee carried on negotiations for sale by appellant to appellee of about one-fourth acre of land in the outskirts of Tyler. Appellant did not think appellee had or could raise enough money to buy the property, but appellee's intentions were to pay appellant about $4,000, then obtain a GI Loan and pay off the balance. Appellant then agreed to sell the property to appellee for $12,500 and told appellee to go see appellant's agent, A. W. Walker, and see if they could work out a deal. Appellee talked the matter over with Walker, and later the parties all met in Walker's office. It was agreed, at appellant's suggestion, that instead of a purchase agreement outright, ap-

pellant would rent the property to appellee for $125 per month, the contract to contain a provision whereby appellee had the option of purchasing the property at any time within one year from date of the contract for $12,500, payable not less than $2500 cash and the balance at the rate of $1000 per year, not to run for more than ten years, at six percent interest. Under that plan the parties understood that appellee would go ahead and erect his building, open up his business, and proceed to negotiate his GI loan. Appellee was required to make a down payment as earnest money and on rent of $500, and this was to pay the rent to August 27, 1946. Thereafter the rent was to be paid $125 per month. Appellant informed appellee that he had a lawyer who would prepare the contract in keeping with the foregoing agreements.

A day or two later Walker advised appellee that the written contract was ready. Appellee went to Walker's office, and was told by Walker that the contract was written as they had agreed, that is, that it contained the option referred to. Appellant was not then present. Appellee believed the representations and statements of Walker to be true, relied upon them, and was induced thereby to execute the contract in duplicate without reading it. Had he not believed the representations and statements of Walker to be true, he would not have signed the contract. The representations were material to the transaction. Appellant later returned to Walker's office and signed both copies, left one for appellee, and took the other with him. Appellee left a check for $500 with Walker, who delivered it to appellant, and it was accepted and cashed.

Appellee proceeded thereafter to close out his business at another location, and with the money derived therefrom, together with his additional war savings and borrowed money, he built a house on the land, and opened up his business. It cost appellee about $9000. He then began his efforts to get a GI loan. But about July he was offered $20,000 for the property and decided to sell. He delivered his copy of the contract to the prospective purchaser for inspection, and was informed that the contract was not as appellee had represented to the prospect. Appellee then, for the first time, read the contract and found that it gave appellee an option to buy the property on March 27, 1947, for $12,500, the purchase price to be paid, at the election of appellant, either all in cash or $2,500 cash and the balance of $10,000, to be evidenced by vendor's lien note, to be paid in ten annual installments of $1000 each, at six per cent interest. If this option should not be exercised on that date, March 27, 1947, then it was to expire. In that event, appellee was given a second option to buy on March 27, 1948, at $15,000, payable at the election of appellant either all cash or $3000 cash and the balance of $12,000 in twelve annual payments of $1000 each at six per cent interest. Either option was available to appellee only while he was not in default in his rents.

Appellee immediately got in touch with Walker, who assured him that the deviation from the agreement "was a typographical error" and that the contract would be modified or changed so as to set forth the exact agreement. Walker concurred that it did not do that in its then form. Both Walker and appellee sought appellant, who agreed to change it accordingly. For three or four months appellee importuned appellant to correct the contract. Appellant continued to promise to do so until about November 1st, when he told appellee bluntly that he "did not have it written to change." Appellee then declined to pay the next rent due November 27, 1946. Appellant later re-possessed the property, including the house built by appellee. Further facts will be stated where necessary to discussion of points for decision.

## Opinion.

In the trial court appellant, by pleadings, motions, and throughout the trial urged that there was a novation of the original contract of March 27, 1946, by reason of which appellee lost any right of action he might have had to recover damages for fraud. However, he now states that upon this appeal he is not urging that point. We must assume that he has waived that

contention or concedes novation is not shown. Without further comment we agree that novation is not shown by the testimony. Appellant's main position is now predicated upon his first and second propositions, as follows:

"First Proposition: That part of the contract having to do with the option to purchase the land on March 27, 1947, and on March 27, 1948, was wholly executory when, on December 14, 1946, appellant tendered to appellee's attorney a new agreement in writing which was accepted by the attorney for appellee, and upon which appellee acted in entering into the contract with C. O. Riggins under date of December 26, 1946. Being executory on those dates, it was competent for the parties to enter into a new agreement altering, modifying and supplementing the original agreement by the substitute contract."

"Second Proposition: Appellee, with full knowledge of the fraud he claims was committed upon him, and while the contract remained executory, sought and obtained an amendment to the contract in respect to the time for exercising his option. He thereby condoned the fraud and waived his right of action for damages." After appellee discontinued his rent payments, negotiations between the parties continued for an adjustment. Appellee prepared an instrument dated December 7, 1946, which he signed, and which he and his attorney requested appellant to sign. It would have constituted an amendment of the original contract, both as to rental provisions and the option to buy. Appellant refused to sign it, and instead had his attorney prepare another instrument, purporting to be a contract of sale, bearing date December 14, 1946. Appellant signed this instrument and delivered it to appellee's attorney for the purpose of his examination and, if approved, for appellee's signature. Appellee under advice of his attorney refused to sign it. By the terms of that instrument appellant proposed to sell the property to appellee for $12,500 on terms of $2500 cash and the balance on credit of ten years payable $1000 per year, at six per cent interest, the option to sell to remain in effect for sixty days after December 10, 1947, would expire at mid-night of February 10, 1948, after which time said option was to become null and void, and the original contract would again become operative.

 The appellee, having invested all his savings and borrowings in the property, was still desirous of recovering what he could out of it. On December 26, 1946, he entered into an option agreement with one C. O. Riggins for the sale of the property. Under its terms Riggins was given an option to buy the property for $19,500, of which $10,000 might be on credit of ten years, payable annually (amount not stated), at six per cent interest. The option expired on January 7, 1947, without Riggins having taken it up. The agreement merely gave to Riggins the privilege but did not bind him to the obligation to buy, and it carried no provision for penalty or liquidated damages. Appellee received no consideration for the option, but Riggins paid an attorney $10 for preparing it. It was wholly unenforceable against Riggins. In this condition of the record the court submitted Special Issue No. 13, which, with the jury's answer, was as follows:

"Do you find, from a preponderance of the evidence, that Plaintiff did accept and act upon the contract dated December 14, 1946, and signed by defendant, Percy Andrews, in entering into the option contract with C. O. Riggins, dated December 26, 1946? Answer 'He did accept' or 'He did not accept.' Answer: 'Yes, he did accept.'"

The court, in entering judgment, on motion of appellee, disregarded the jury verdict on Special Issue No. 13. No complaint is raised on this appeal which brings that action in review. Any error of the court in entering judgment in disregard of the jury's answer to Special Issue No. 13 is therefore waived. Rule 418, T.R.C.P.; San Antonio Joint Stock Land Bank v. Malcher, Tex.Civ.App., 164 S.W.2d 197; Doherty v. San Augustine Ind. School Dist., Tex. Civ.App., 178 S.W.2d 866. However, we agree with the trial court in its action for the reason that the evidence was insufficient to authorize the verdict returned on that issue. Appellant's agent, Walker,

talked with appellant about appellee's selling the property, and appellant told him it was "perfectly all right just so he (appellant) got his money out of the land." Walker then advised appellee to find a buyer. Appellant testified that when he had prepared his proposal of December 14, 1946, he gave it to appellee's attorney, and the attorney said, "That is fine." The foregoing is all the evidence upon which the jury might rest its verdict on Special Issue No. 13, so far as "acceptance" is concerned. There is no evidence that appellee's attorney had authority to effect a binding acceptance of the instrument. The further evidence and circumstances negative such conclusion, and it is undisputed that appellee, on advice of his attorney, refused to sign the instrument. Appellee's attorney, Mr. Neill, had died in the meantime, and without having testified.

The record does not support the jury verdict on Special Issue No. 13 nor appellant's claim of a legal acceptance by Mr. Neill nor by appellee.

The first proposition is further grounded on the assertion of fact that appellee "acted upon" the proposal of December 14, 1946, in entering into the option agreement with Riggins. The only circumstance contributing to that conclusion is to be found in the statement of credit terms mentioned in the two instruments. Those terms, however, were the same as originally agreed upon, and also the same as the credit terms named in the first option under the original contract of March 27, 1946. It is just as consistent that the credit terms in the Riggins agreement were induced by the original terms orally agreed upon and by the original contract as by appellant's proposal of December 14th. The evidence, therefore, does not support the jury verdict that appellee "acted upon" appellant's proposal, nor does it support appellant's second asserted fact in his first proposition.

Appellant finally asserts in his first proposition that "it was competent for the parties to enter into a new agreement altering, modifying and supplementing the original contract by the substitute contract." The parties, of course, had the right to alter, amend or modify the original

contract, or to cancel it, or to substitute another for it, whether wholly or partly executory. But they did none of these. Each party declined to sign the proposal of the other. Each instrument proposed by the parties contemplated signatures by both of them. If, by the concluding language of appellant's first proposition, supra, he means to assert that the instrument of December 14, 1946, was a "substitute contract" for the original, the evidence does not support that contention. The instrument was merely a proposal to amend or modify the original contract, and does not, by its terms, propose to be a substitute for the original. Appellant's first proposition is overruled.

Appellant's second proposition, supra, is likewise predicated upon an erroneous assumption of fact, namely, that appellee "sought and obtained an amendment to the (original) contract in respect to the time for exercising his option." As already pointed out, appellant's proposed amendment or modification was never signed nor accepted by appellee, and did not become binding on him. In his first proposition he calls his proposal a "substitute" for the original contract, and in his second proposition he calls it an "amendment."

His contention that appellee "condoned the fraud and waived his right of action for damages" is grounded on erroneous assertions of fact already pointed out. "One who has been injured by fraud may elect to accept the situation created by the fraud and seek to recover his damages or he may elect to repudiate the transaction and seek to be placed in statu quo", that is, by action to rescind. 37 C.J.S., Fraud, § 65, page 354. Tips v. Barneburg, Tex.Civ.App., 11 S.W.2d 187, writ refused. He cannot do both. 20 Tex.Jur., p. 121, Sec. 81. The defrauded party's action to recover damages arises in tort and not on the contract. The contract is merely collateral to the tort action. 37 C.J.S., Fraud, § 63, page 352. In Evans v. Southern Methodist University, Tex.Civ.App., 87 S.W.2d 918, reversed on other grounds, 131 Tex. 333, 115 S.W.2d 622, it is said: "The law is well settled that one who is induced to make a contract by deceit and fraud has a choice of two

remedies on the discovery of the fraud. He may affirm the contract and sue for his damages; or he may rescind it and sue for the property he has sold or parted with. The former remedy counts upon and affirms the validity of the transaction; the latter repudiates the transaction and counts upon its invalidity. As often held, the two remedies are utterly inconsistent and the choice of one rejects the other because an alleged contract cannot be valid and void at the same time."

■ The appellee elected to affirm the original contract, his final act of affirmance being the bringing of his suit for damages. Acts done in affirmance of the original contract do not necessarily constitute waiver of the right of action for damages. Ellerd v. Burkhalter, Tex.Civ.App., 269 S.W. 197; Evans v. Southern Methodist University, supra. For such acts to amount to a waiver of the fraud they must be done, not only with full knowledge of the fraud and of all material facts, but "with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception". 37 C.J.S., Fraud, § 69A, pages 362, 363; Indemnity Ins. Co. v. Sterling, Tex.Civ.App., 51 S.W.2d 788, writ dismissed; Payne v. Beaumont, Tex.Civ. App., 245 S.W. 94, writ refused; Metzger Bros. v. Johnson, Tex.Civ.App., 45 S.W.2d 263, writ refused; Kennedy v. Bender, 104 Tex. 149, 135 S.W. 524. Acts which do not indicate an intention to waive the fraud do not operate as a waiver. Kennedy v. Bender, supra.

■ The rule is correctly stated in 43 Tex.Jur., p. 896, Sec. 4: "Like abandonment, waiver is mainly a question of intention; for to constitute a waiver there must be an intention to relinquish the right in question or such conduct as warrants an inference of the relinquishment." In addition to other cases cited by the author, the text carries the following from Fritz Motor Co. v. Gabert, Tex.Civ.App., 41 S.W. 2d 72, 73: " 'There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby.' "

■ As already stated, appellant grounds his contention of waiver on the assumption of fact that appellee "obtained from appellant an amendment of the original agreement whereby he could sell the property at any time between December 10, 1946, and midnight February 10, 1947; * * * upon terms suitable to him (appellee) * * *. It made a completely new contract in respect to the subject-matter, and effectively precluded all claims for damages." Appellant shows no other basis for his claim of waiver. As already pointed out, there was no acceptance of the proffered amendment. As indicative of the fact that appellant did not consider that appellee had waived his right of action, he continued to make promises that he would have the contract amended so as to speak the original agreement. There is nothing to indicate that appellee's efforts to get that done were accepted by appellant as a waiver of the fraud. The natural and reasonable inference is that appellee was trying to save himself from the consequences of appellant's fraud. Appellee's contract with Riggins, insubstantial and wishful only, was but a final gasp to save himself from what was to him a serious loss. Efforts by appellee to sell the property to outside parties should be considered in the light of the situation existing at that time. If he could do this and satisfy appellant on his price and terms, he might thereby settle a controversy and mitigate appellant's damages, both of which are favored by the law. It would be a harsh rule, indeed, to hold that appellee, after being placed in a worsened condition through appellant's deception, could not even attempt to rescue himself and his property without at the same time abandoning all claim for his loss. It would be a severe penalty inflicted upon one who, after trusting the defrauding party, finds himself enmeshed in a situation from which he dare not even attempt to extricate himself. Appellee did nothing that placed appellant in any worse position. In fact, appellant has so far profited by what the jury found to have been a false and fraudulent act. If appellee has so acted as to warrant an inference that he had intentionally relinquished his claim

for damages for such wrong, it is incumbent on appellant to point it out. He has not done so, and we have found no evidence sufficient to lead to that conclusion.

■ Waiver is not only a question of fact to be determined by the jury, 43 Tex.Jur., p. 900; Metzger Bros. v. Johnson, supra, but it must be affirmatively pleaded as a defense. Rule 94, T.R.C.P.; Hodges v. Cole, Tex.Civ.App., 117 S.W.2d 822; Federal Union Ins. Co. v. Hardin, Tex.Civ.App., 115 S.W.2d 1144; City of Wichita Falls v. Bruner, Tex.Civ.App., 191 S.W.2d 912. Even though waiver be established by proof without objection, effect cannot be given to the facts so proven in the absence of a plea of waiver. Hodges v. Cole, supra; Federal Union Ins. Co. v. Hardin, supra; White v. Christie, Tex.Civ.App., 224 S.W.2d 717. Appellant did not plead waiver. At the trial he was relying upon an affirmative defense based on allegations that his proposal of December 14, 1946, constituted a novation.

■ Appellant did not request a charge on waiver. By trial amendment he pleaded estoppel, but no charge submitting the issue was requested by him, and there is no jury finding on the issue. In the absence of jury findings on waiver and estoppel, and none having been requested of the court, "such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment." Rule 279, T.R.C.P.

■ Appellant urges, however, that the above stated rules as to waiver do not apply where the fraud is based on a contract which is wholly executory, and that the rule in such case is correctly stated in his second proposition, supra. It is true that in considering the question of waiver, some authorities distinguish between those cases where the fraud is based on a contract wholly executory, and one wholly or partly executed. It is doubted that Texas authorities make that distinction. See Wolff v. Cohen, Tex.Civ.App., 281 S.W. 646, writ dismissed, w. j. The rule, however, is definitely established that acts done after discovery of the fraud in affirmance of a contract which is partly executed bring the case within the same class as where the contract is wholly executed; that is, such acts do not constitute a waiver of the right of action for damages. 37 C.J.S., Fraud, § 69d, page 366; Witherspoon Oil Co. v. Randolph, Tex.Com.App., 298 S.W. 520; Wolff v. Cohen, supra. At the time appellee discovered the deception the contract had already become partly executed. Appellee had paid $500 for rent to August 27. He had expended about $9,000 in improvements, as contemplated by the parties. He was already in possession by consent of appellant. His right of action for damages had then accrued. However, Rule 94, supra, and decisions thereunder require waiver to be pleaded, and make no distinction between contracts wholly executory and those wholly or partly executed. For reasons above stated, appellant's second proposition is overruled.

■ Appellant's sixth proposition and statement thereunder assert that the evidence was insufficient to establish the fact that appellant or Walker represented to appellee that the contract of March 27, 1946, contained the option alleged by appellant as having been agreed upon; that Walker's statements to appellee as to what was in the contract were mere expressions of opinion, and that appellee had opportunity to assure himself about it by reading the contract before signing it. In response to issues as to whether such representations were made to appellee by "Percy Andrews and A. D. Walker, or either of them," the jury answered "Yes." Appellant did not except to the form of the issues, (No. 3 and No. 8). Appellant requested and the court gave the following additional special issue: "Do you find from a preponderance of the evidence, that A. D. Walker said or did anything that induced D. F. Powell to sign the contract dated March 27, 1946, without reading it?" To which the jury answered "Yes, he did." Appellee testified that before he signed it, Walker told him the contract was complete "and was all in accord—proper and drawn up according to the way we had agreed it would be drawed. He was sure it was drawed up the way we had agreed it would be drawed up;" "Mr. Walker told me he was sure

it was written just like we had agreed"; "he was sure it contained all agreements we had agreed on at the conference." Walker testified that he called appellee and told him that "I had the agreement fixed up and ready;" that appellee "asked me if all right and I told him I had no doubt but what it was." Walker testified that he had not then read the contract, but he did not inform appellee of that fact. We think the evidence was sufficient to support the jury's verdict on the issues referred to.

We have examined the two remaining propositions submitted by appellant, but find them without merit.

The judgment of the district court is affirmed.