**TEXACADIAN FUELS, INC., Appellant,**

v.

**LONE STAR ENERGY STORAGE, INC. and Marcel deGraye, Appellees.**

No. 01–93–00582–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 19, 1995.

Rehearing Overruled March 30, 1995.

Theo W. Pinson and Glenn R. Lemay, Houston, for appellant.

Dale M. Tingleaf and Marvin A. Wurzer, Houston, for appellees.

Before ANDELL, COHEN and WILSON, JJ.

## OPINION

ANDELL, Justice.

In this case we must decide whether a release agreement can release a claim of fraud in the inducement to the agreement itself. We hold that it cannot.

Appellant, Texacadian Fuels, Inc. (Texacadian), assignee, sued appellees, Lone Star Energy Storage, Inc. (Lone Star) and Marcel deGraye (deGraye), for fraud allegedly committed against assignor, David McGee. Lone Star and deGraye based their motion for summary judgment on three defenses, and the trial court granted summary judgment without stating the specific grounds. In three points of error, Texacadian asserts the trial court erred in granting summary judgment because Lone Star and deGraye failed to prove the elements of the three defenses

in their motion. We reverse and remand for trial.[1]

## The Release Agreement

Lone Star and deGraye had contracted with McGee, an engineer, for his consulting services in connection with a storage facility to be constructed for Houston Lighting and Power (HL & P). The contract provided that Lone Star would pay a retainer fee to McGee. McGee and Lone Star later restructured that "retainer agreement" into a "release agreement." The release contained a schedule of payments to McGee in exchange for which McGee released Lone Star and deGraye from any claims he may have had against them. By entering the release agreement, McGee also forfeited a stock option that he had under the retainer agreement.

The consideration for McGee's release was based upon the projected completion cost of the HL & P project. If the HL & P project were to be completed at substantially less than $75,000,000, then the savings would result in Lone Star's profits being much higher along with the value of Lone Star's stock. McGee's option on the stock would then be much more valuable. If the completion cost were $75,000,000 or more, Lone Star's profits would be lower and the value of its stock would be lower. As a result, the value of McGee's stock option would also be lower.

McGee released his stock option based on Lone Star's representation that the completion cost of the HL & P facility would be $75,000,000 or more. It is this representation that forms the basis of McGee's and Texacadian's fraud claim.

### Fraudulent Inducement to Contract

Texacadian claims that it is the assignee of McGee's fraud cause of action against Lone Star and deGraye. Lone Star and deGraye contend that Texacadian is bringing its claim under the "release" agreement that McGee signed with Lone Star and deGraye. Hence, they characterize Texacadian's cause of action as one sounding in contract rather than in tort. This characterization is incorrect. Texacadian did not sue as assignee of any rights contained in the release agreement. It sued as assignee of McGee's claim of fraudulent inducement to the release agreement. This is a tort claim.

In their motion for summary judgment, Lone Star and deGraye brought three defenses to Texacadian's cause of action. They claim: (1) the release agreement was unassignable on its face; (2) assignor McGee ratified any fraud they may have committed against him by accepting payments with knowledge of the fraud; and (3) they satisfied the terms of their contract with McGee, so he had nothing to assign to Texacadian.

■ A summary judgment should be affirmed only if the record establishes the movant's right to summary judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Where a summary judgment does not state the specific grounds upon which it is granted, it must be affirmed if any one of the grounds asserted in the motion is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *McCrea v. Cubilla Condominium Corp. N.V.*, 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Texacadian must show that none of the three grounds asserted in Lone Star's and deGraye's motion is meritorious. Texacadian has assigned a point of error to each ground. Therefore, each point of error must be sustained if the summary judgment is to be reversed.

### The Tort Claim was Assignable

In its first point of error, Texacadian asserts that the trial court erred in granting summary judgment because Lone Star and

---

1. This cause has been on appeal before, resulting in a published opinion. *Texacadian Energy, Inc. v. Lone Star Energy Storage, Inc.*, 829 S.W.2d 369 (Tex.App.—Corpus Christi 1992, no writ). Texacadian appealed a previous summary judgment that had been granted in favor of Lone Star and deGraye, on grounds of limitations, res judicata, and collateral estoppel. *Id.* at 370–71. The appeal was equalized to Corpus Christi. *Id.* at 370 n. 1. The court reversed and remanded for trial. The trial court then granted a second summary judgment in favor of Lone Star and deGraye.

deGraye failed to prove an element of their "lack of standing" defense, namely, that the agreement upon which Texacadian sued was unassignable.

In Paragraph 1 of the agreement, McGee released Lone Star and deGraye from any causes of action he might have against them to the date of the release. Lone Star contends that Paragraph 3(a) prohibits assignment. It states:

> McGEE warrants and represents that there is no other party or person (including, but not limited to, his wife), who has derived or will derive from him in any way or manner, (including, but not limited to, (a) assignments and (b) community property laws of any state) any right, claim, demand, damages, cause of action or suit for or by reason of any contract, matter, cause or thing whatsoever with respect to the persons being released in Paragraph 1. In addition, McGEE represents and warrants that he was unmarried from January 1, 1982, to March 31, 1984.

Lone Star and deGraye claim that the agreement is unassignable for either of two reasons: (1) its terms preclude any assignment; or (2) the agreement required McGee's confidentiality about certain matters (in Paragraph 4(c)), which would be violated by the assignment.[2] Either of these two reasons would amount to a claim that the agreement is unassignable on its face. Otherwise, a fact issue would arise about interpretation of the contract.

Lone Star and deGraye contend that Paragraph 3(a) expressly stipulates that McGee could not assign the agreement to anyone. Texacadian counters that Paragraph 3(a), when read in conjunction with Paragraph 1, only stipulates the scope of claims released. However, the assignability of the release agreement is not dispositive of Texacadian's claim.

For Lone Star's argument to prevail, this Court must view Texacadian's claim as one sounding in contract. Texacadian, however, has sued in tort for fraudulent inducement to contract. Texacadian is claiming to be the assignee of McGee's fraud claim, not of McGee's contractual rights to payment under the release agreement. The relevant question is whether McGee could and did assign his fraud claim. Lone Star and deGraye have not argued that McGee could not assign a tort claim; they simply address the assignability of the agreement.

We hold that, as a matter of law, a release agreement cannot release a claim of fraudulent inducement to the agreement itself. Texacadian's assigned claim of fraudulent inducement to contract could not, therefore, be barred by the release agreement. Therefore, Lone Star's and deGraye's defense that Texacadian lacks standing under the contract does not address Texacadian's cause of action in tort. Lone Star and deGraye have failed to show that Texacadian lacks standing to bring this suit. If the trial court granted summary judgment on this ground, it was error.

We sustain Texacadian's first point of error.

### Lone Star Did Not Prove Ratification

In its second point of error, Texacadian asserts the trial court erred in granting summary judgment because Lone Star and deGraye failed to prove one of the elements of their ratification defense, namely, that assignor David McGee had actual knowledge of any fraud.

Lone Star and deGraye claim that McGee knew of their misrepresentation to him for a year before he accepted $332,200 as payment under the release agreement. His knowing acceptance of these funds, they argue, is a ratification of their fraudulent acts. They point to two documents to support their ratification defense. First, McGee stated in an affidavit that in November 1987, "an employee of Lone Star stated to me that the North Dayton Project had been completed for a cost which was less than the original bid price of $47,500,000." Second, a letter from McGee's to Lone Star's lawyer in February 1988 stated, "Mr. McGee, who has good rea-

---

**2.** Lone Star and deGraye did not argue confidentiality in the trial court as a basis for holding the contract unassignable. It is, therefore, unnecessary to consider it. *Cockrell v. Republic Mortgage Ins. Co.,* 817 S.W.2d 106, 113 (Tex.App.—Dallas 1991, no writ).

son to suspect that the actual cost was more like $48,000,000.00, has asked Mr. Lazzari [President of Lone Star] for evidence to substantiate his warranty since Mr. McGee did rely on this warranty to enter into the new Agreement." Lone Star and deGraye contend that these two items show that McGee had knowledge of their fraud before he accepted the final payment of $332,200 in November 1988 under the agreement. They claim when McGee accepted the payment after knowing of the fraud, he ratified their fraudulent acts. If this were so, he could not then assign a claim for fraud.

██ The ratification defense requires intentional ratification with full knowledge of the fraudulent acts, not simply awareness of rumors. *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 699 (Tex.App.—Dallas 1992, writ denied). Acts done in affirmance of the original contract do not necessarily amount to a waiver of the right to sue for fraud. *Andrews v. Powell*, 242 S.W.2d 656, 661 (Tex.Civ.App.—Texarkana 1951, no writ). McGee's acceptance of the final payment of $332,200 under the release agreement does not necessarily constitute a waiver of the fraud claim. For McGee to ratify the fraud, he would have to do so "not only with *full* knowledge of the fraud and of all material facts, but with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception." *Id.* (internal quotation marks omitted) (emphasis added).

██ McGee must have had full knowledge of the fraudulent acts at the time he allegedly ratified. *Wise v. Pena*, 552 S.W.2d 196, 200 (Tex.App.—Corpus Christi 1977, writ dism'd). If the evidence of his ratification is controverted, the question is for the trier of fact. *Id.; Spangler v. Jones*, 797 S.W.2d 125, 131 (Tex.App.—Dallas 1990, writ denied). The burden is on Lone Star and deGraye to prove *full knowledge of the fraud* and to prove a *voluntary, intentional choice to ratify* the release agreement in light of that knowledge. *Spangler*, 797 S.W.2d at 131. In a summary judgment context, evidence favoring Lone Star's and deGraye's claim of ratification cannot be considered unless it is uncontroverted. *Kubinsky v. Van*

*Zandt Realtors*, 811 S.W.2d 711, 713 (Tex. App.—Fort Worth 1991, writ denied).

Lone Star relies in part upon the letter from McGee's lawyer. Yet this letter also revealed McGee's uncertainty about the fraud, in the following paragraph:

> I believe that this dilemma can be resolved simply, if you will allow your client to disclose the actual cost of the storage facility and substantiate same with proper documentation. At that point *if the actual construction cost is $75,000,000.00 or more*, the stock options may be worthless. *If, however, the actual cost is less*, then my client is entitled to share in that portion of the market value that exceeds the construction costs.

(Emphasis added.)

██ By this letter, Texacadian controverted Lone Star's and deGraye's evidence of McGee's alleged ratification. McGee had heard rumors that the project had been completed at around $47,500,000, and he directed his attorney to inquire from Lone Star whether this was true. Lone Star never answered. It appears that McGee attempted to discover whether fraud existed, but he never knew that it did. He could not have ratified the fraud until he knew of it. Notice is not equivalent to full knowledge.

██ Both McGee's affidavit and the letter from McGee's attorney raise a fact question concerning ratification. If any fact question exists about whether McGee intended to waive the fraud claim through ratification, the summary judgment cannot be granted on this ground. *Andrews*, 242 S.W.2d at 661; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). If the trial court granted summary judgment on the grounds of the ratification defense, it was error.

We sustain Texacadian's second point of error.

### Satisfaction of Contract Does Not Bar the Tort Claim

In its third point of error, Texacadian asserts the trial court erred in granting summary judgment because Lone Star and de-

Graye failed to prove that no genuine issue of material fact existed regarding their "satisfaction of contract" defense. Lone Star and deGraye claim that McGee–Texacadian cannot have a claim against them under the agreement because they satisfied the contract's terms when they sent a letter to HL & P stating a completion price. They refer to Paragraph 5, which states:

> Lone Star represents and warrants that the cost of the North Dayton Project upon "Completion Date for the Second Cavern" as that term is defined in that certain agreement between Lone Star and HL & P dated September 30, 1983, will not be less than $75,000,000.00. This representation and warranty *shall be deemed satisfied* upon Lone Star advising HL & P in writing within thirty days of the "Completion Date for the Second Cavern" as that term is defined in said agreement that the cost of the North Dayton Project is an amount which will be not less than $75,-000,000.00 and agreeing in such writing to HL & P to be bound by such amount, at HL & P's election, as constituting the "total actual capital cost of the Facility" at the "Completion Date for the Second Cavern" for purposes of Article XI, Section 1 of said Agreement entitled "OPTION TO PURCHASE."

(Emphasis added.)

Lone Star and deGraye point to a letter they sent to HL & P, which states:

> Please be advised that we anticipate that the cost of the Facility, which is the subject of the agreement between us dated September 30, 1983 ("Agreement"), will be not less than $75,000,000. For purposes of your option in Article XI Section I of the Agreement only, we agree that the amount of the "total actual capital cost of the Facility" at the "Completion Date for the Second Cavern" will not be less than $75,000,-000.

■ Lone Star and deGraye argue that the letter was written to satisfy the express terms of the release agreement and that it succeeds in doing so. Texacadian argues that the letter itself is fraudulent, so it cannot satisfy the terms of the release agreement. Lone Star counters by arguing that this claim of fraud is irrelevant in determining whether the letter satisfied the conditions of Paragraph 5. They point to the "deemed satisfied" language in Paragraph 5 of the agreement. Lone Star and deGraye argue that they have strictly complied with the requirements of Paragraph 5, even if they committed fraud in the process: "Issues of misrepresentation or fraud (which Appellees expressly deny) are immaterial for meeting the condition provided in Paragraph 5." They assert that all they had to do to satisfy Paragraph 5 was send the letter, even if it was false.

■ The letter, however, does not precisely fit the requirements of Paragraph 5. Paragraph 5 states that the warranty will be deemed satisfied when Lone Star advises HL & P that it will "be bound by" the $75,000,-000.00 completion cost, at HL & P's election. The letter did not contain this agreement. Whether the letter's reference to "Article XI Section I" of the agreement between HL & P and Lone Star covers this is a fact issue. The existence of any ambiguities in contract or fact issues in the satisfaction of contract will preclude summary judgment. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987).

■ Moreover, the satisfaction of contract defense is inapposite to a fraud claim. Texacadian is not suing as assignee of a contract that may have been satisfied. It is suing as assignee of a fraud claim. Even if Lone Star and deGraye satisfied the contract, they may still be liable for fraudulently inducing McGee to enter into it.

We sustain Texacadian's third point of error.

## Conclusion

By sustaining all three of Texacadian's points of error, we hold that none of the grounds stated in the motion for summary judgment are meritorious.

We reverse the judgment of the trial court and remand for trial.