**J. Porter SMALLWOOD and Wife Wanda Lou Smallwood, Appellants,**

**v.**

**Josephine SINGER, Appellee.**

**No. 6–91–019–CV.**

Court of Appeals of Texas, Texarkana.

Nov. 26, 1991.

Rehearings Overruled Jan. 7, 1992 and Jan. 22, 1992.

J.D. McLaughlin, McLaughlin, Hutchison & Hunt, Paris, for appellants.

Hardy Moore, Moore, Payne & Clem, Paris, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

J. Porter Smallwood and his wife, Wanda Lou Smallwood, appeal from a judgment in favor of Josephine Singer. The judgment was based upon a promissory note and is in the amount of $119,955.40.

The Smallwoods bring nineteen points of error on appeal contending that the trial court erred in submitting an issue of waiver to the jury because there was no evidence or insufficient evidence to support that submission, in entering a judgment based on the jury's finding on waiver, in failing to enter a judgment for the Smallwoods on the jury's findings on fraudulent representation, in failing to submit an issue on exemplary damages, in failing to submit various other issues and instructions to the jury, in awarding judgment for interest on the entire note, in not crediting the Smallwoods with interest paid on the note, in not crediting the Smallwoods with all payments made on the note in accordance with jury findings and undisputed evidence, and in entering judgment for Singer.

Singer has brought one cross-point on appeal. She contends that some of the deductions from the unpaid balance of the note were unwarranted and that the record is devoid of any evidence that the stock of R.C. Singer, Inc. did not have a value of $344,978 at the time of sale. Because of the jury's finding on waiver, she contends she is entitled to the entire amount of the note with interest, less $27,211, which she

acknowledges should be subtracted from the total.

Josephine Singer brought a suit on a promissory note against the Smallwoods. This note arose out of a contract by which the Smallwoods purchased stock in R.C. Singer, Inc. R.C. Singer and wife, Josephine Singer, owned all 403 shares of the stock of R.C. Singer, Inc. and sold them to J. Porter Smallwood and Leland North. (Prior to the filing of the lawsuit, North sold his 201 shares to J. Porter Smallwood. North was initially a party to the suit as a signatory on the note, but he was later dismissed from the suit because he had gone into bankruptcy.) Prior to the closing, R.C. Singer had furnished the Smallwoods a handwritten statement showing that the book value of the corporation was $344,978. The Smallwoods paid $99,978 in cash and executed a note for the remaining $245,000. The note payments were for twenty-eight months. When the Smallwoods stopped making payments, the Singers foreclosed on the chattel mortgage.[1] When suit was instituted on the note, the Smallwoods pled failure of consideration. The Smallwoods also asserted that R.C. Singer had misused funds from the business while he was serving in a managerial capacity after the sale to the Smallwoods. R.C. Singer died during the suit, and Josephine continued to prosecute the suit as the surviving payee on the note.

The jurors found that R.C. Singer wrongfully misused funds from the business. They further found that R.C. Singer made a misrepresentation prior to the sale, but they also found that the Smallwoods had waived their rights to damages brought about by the misrepresentation.

We shall first address the Smallwoods' contention that there was no evidence to support the finding of a waiver and that the trial court erred in submitting the issue to the jury and in entering judgment based upon that finding.

In reviewing no evidence points, the court considers only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary and conflicting evidence: *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex. 1981).

The jury made an affirmative finding on the following jury question:

Do you find from a preponderance of the evidence that after being aware of the false representations made by R.C. Singer inquired about in Question 1, Smallwood and North treated the note as a valid obligation and knowingly gave up their right to question its validity?

■■■ There was evidence that the Smallwoods continued to make payments on the note even after they had been sent monthly statements reflecting that the book value of the corporation was not the amount represented to them prior to the purchase.

If the failure of consideration, or what might be characterized as a failure of partial performance,[2] is a material breach of contract, the other party has a right to sue for a total breach or *to elect to continue performance* and sue for a partial breach. *See* J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 169 (1970). Thus, the continued payment of the note payment indicated an election to continue performance and what was waived was the right to rescind. *See Wichita Engineering Co. v. Roy J. Heyne Machine Co.*, 200 S.W.2d 685 (Tex. Civ.App.—Fort Worth 1947, no writ). However, a waiver of the right to rescind an agreement does not waive or defeat the right to recover damages for the other party's failure to perform. *Taub v. Woodruff*, 134 S.W. 750 (Tex.Civ.App.1910, no writ); *Bounds v. Hickerson*, 26 Tex.Civ. App. 608, 63 S.W. 887 (1901, no writ).

■■■ The Smallwoods' pleadings are somewhat confusing as to the relief

---

1. The judgment credited the Smallwoods with $57,000 from the sale of personal property, which was apparently the property foreclosed upon under the chattel mortgage.

2. *See* RESTATEMENT (SECOND) OF CONTRACTS § 237 (1981).

sought. At one point in the pleadings, they pled that the fraud constituted "a complete and total failure of consideration and said failure renders the sale null and void." They also contended that they were entitled to recover the excess of the amount paid over and above the book value of the assets of R.C. Singer, Inc. A party who is injured by fraud may elect to accept the situation and recover damages, or he may repudiate the transaction and seek restoration of the status quo in an action to rescind. However, a party cannot do both under the doctrine of election of remedies. *Burroughs Corp. v. Farmers Dairies*, 538 S.W.2d 809 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). A study of the Smallwoods' pleadings and the special issues offered to the jury suggests that they elected to seek damages under the terms of the contract. These damages could not be waived by making payment under the terms of the contract and note, and the making of payments amounts to no evidence of waiver.

Singer cites cases in which there were note renewals to support their contention of waiver. *Gaylord Container Division v. H. Rouw Co.*, 392 S.W.2d 118 (Tex.1965); *Hunter v. Lanius*, 82 Tex. 677, 18 S.W. 201 (1892); *Culver v. Haggard*, 270 S.W. 846 (Tex.Comm'n App.1925, judgm't adopted). The present case, however, is not a situation where the parties, after becoming aware of the fraud perpetrated on them in a prior transaction, executed a renewal of their obligation. *See B & R Development v. Rogers*, 561 S.W.2d 639 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.). Singer has cited no cases in which the party waived fraud by merely making monthly payments.

That the Smallwoods continued performance under the terms of the contract standing alone is no evidence of waiver in an action for damages based on the continued existence of the transaction. We sustain the Smallwoods' points of error that the trial court erred in submitting an issue of waiver to the jury because there was no evidence to support that submission and their point of error that the trial court erred in entering a judgment based on the jury's finding of waiver.

We next address Singer's cross-point in which she contends that the Smallwoods were not entitled to any damages under the contract because the record is devoid of any evidence that the stock of the corporation did not have a value of $344,978 and that the jury question concerning book value presupposed that the sale was based upon book value.

We first must determine the significance of the jury finding concerning book value. The Supreme Court of Texas has held that book value is entitled to little, if any, weight in determining the value of corporate stock, and many other factors must be taken into consideration to determine the value.[3] *Bendalin v. Delgado*, 406 S.W.2d 897 (Tex.1966). As a matter of law, book value is not synonymous with fair market value. *Chaffe v. Murray*, 492 S.W.2d 680 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). Furthermore, the expert testimony presented at the trial also confirmed that book value and market value are not synonymous terms.

The Smallwoods, however, are entitled to damages of the difference between the book value that was represented to them and the actual book value if they can establish that the terms of the contract called for the purchase price to be the amount of book value and that they paid more than this amount because of R.C. Singer's fraud.

The jury made a finding of a false representation by R.C. Singer to the Smallwoods and North.[4] When this broad submission

---

3. The only case that we have found in any jurisdiction to suggest that book value of stock in a closely-held corporation is prima facie evidence of value is *Percy v. Percy*, 115 Ariz. 230, 564 P.2d 919, 920 (Ct.App.1977).

4. The jury was asked in question # 1:

Do you find from a preponderance of the evidence that at the time of the purchase of R.C. Singer Inc., R.C. Singer made false representations as to material facts to Smallwood and North, with the intent of inducing Smallwood and North to purchase R.C. Singer Inc., and that Smallwood and North relied on such representation, if any?

is considered in light of the evidence, the basis for this finding undoubtedly is R.C. Singer's representation as to the value of the stock, but there was no finding that the purchase price was established on the basis of the book value of the corporation. When such an element is omitted from the charge without request or objection and there was factually sufficient evidence to support a finding thereon, it shall be deemed found by the trial court in such a manner as to support the judgment. TEX. R.CIV.P. 279. The trial court clearly found that the Smallwoods were entitled to judgment on this basis.[5] However, the Smallwoods were not awarded an offset for that amount because the judge determined that they had given up their right to question the validity of the notes based upon the jury's finding of waiver.

We shall now examine the record to determine if there is evidence to support a deemed finding that the basis of the contract price was to be the book value of the corporation.

Leland North's testimony was introduced by deposition and he testified as follows:

Q. And what was the basis of your purchasing the business?

A. Well, we looked at it and decided to buy it but we had a sheet of paper that he [R.C. Singer] had given us with *the value* of it and—*book value* of the business and that's what we was buying it off of.

Q. *Book value* of the business?

A. Yes, sir.

(Emphasis added.) [SF 151]

After North was shown Exhibit 6,[6] the following questions and answers occurred:

Q. Mr. North, there has been introduced into evidence here an instrument. An instrument that's in evidence as Defendant's Exhibit 6, and I'll ask—I'll hand that to you and see if you recognize that exhibit?

A. This is what we bought it off of. This was all that was available at the time we were—we was told was the *actual value* of everything that was out there.

The jury answered, "Yes."

5. The judgment states, "On these undisputed facts and jury findings, defendants would be entitled to judgment against plaintiffs for $115,450.00...."

6. Exhibit 6 was handwritten and contained the following:

7/31

| | | | |
|---|---:|---|---|
| PARTS | 200,000 | | |
| CARS–TRKS | 70,900. | Owe 6,066.00 | |
| SHOP EQUIP. | 15,000 | | |
| FURNITURE | 10,000 | | |
| FIXTURES & EQUIP. & OFFICE | 20,000 | | |
| SIGNS | 2,000. | Owe white on big sign | |
| WHOLE GOODS | 37,000. | (Paid for) | |
| RESERVES | 13,000 | | |
| | 319,900. | also 5000 less on FE Floor Plan | |
| CASH & RECALES—PAYABLE | 25,078 | | |
| | 344,978 | | |
| Dist 29% | 99,978. | (70,000 is note payment) | |
| Note | 245,000 | | |
| | | 682.33 | 27497.88 |
| actual sales | | 299.78 | |
| | | 245000. | |
| | | payment of 70,000 | |
| Lease 2500.00 mo. | | | |

Q. Who prepared that exhibit?

A. I think Mr. Singer did.

(Emphasis added.)

Later on in North's testimony, he testified that, "Mr. Singer said that was the *book value* of the business as of that date." (Emphasis added.)

Mr. North also testified, "That there was no financial statement, but this exhibit 6 was to be—Mr. Singer said this was accurate as of July 31 of the business, *book value* of what we were buying. There was no blue sky, not—this was the *actual value.*" (Emphasis added.)

J. Porter Smallwood testified that:

Q. He [Singer] represented them to us as the *true book value* of the business which he was selling to us.

Q. And the *true book value* as of what date?

A. As of July 31, 1980.

(Emphasis added.)

J. Porter Smallwood also testified as follows:

Q. Why didn't you go out and get an appraisal?

A. I was buying the business at book value and I saw no necessity of getting an appraisal.

Although the parties sometimes used book value and actual value interchangeably in the testimony, there is sufficient evidence to support a deemed finding that the parties were basing the purchase price on the book value of the corporation.

In order for there to be a deemed finding, we must also determine that there was no objection to the failure of the court to submit this issue to the jury. Singer objected to the submission of the question of book value to the jury on the basis that there was no evidence to show that the Singers had represented those figures to be book value and on the basis that the question was not what book value was but what the actual value of the stock was. Singer's objection would have been correct if the Smallwoods had sought damages on the

basis of the difference between the actual value of the stock received and the represented value. But the Smallwoods were entitled to another measure of damages, that being the excess amount that they had paid on the purchase price because of the fraud. This measure of damages does not require a finding of the actual market value. There was no objection to the failure to submit the question of whether the book value was the basis of the consideration to be paid by the Smallwoods.

Pursuant to TEX.R.CIV.P. 279, we have determined that there was factually sufficient evidence to support the judgment on this issue. Having further determined that there was no objection to the trial court's failure to submit this issue to the jury, we deem that the trial court made a finding on this matter in support of its judgment. We also overrule Singer's cross-point contending that the Smallwoods were not entitled to damages under the contract because the record was devoid of any evidence that the stock of the corporation did not have a value of $344,978 and that the jury question concerning book value presupposed that the sale was based upon book value.

Singer pled and now contends that any cross-action or counterclaim by the Smallwoods was barred by the four-year statute of limitations.[7] The dates involved are undisputed: the note was signed on August 30, 1980. Foreclosure after default on the note was in 1983, and the records of the corporation were available to the Smallwoods before that date. Although Singer contends that the Smallwoods learned of the actual book value much earlier, the Smallwoods admit to learning about the misrepresentation in 1983. Suit was brought on the note on April 4, 1986. The Smallwoods did not file their cross-action until 1990.

 Section 16.069 of the Texas Civil Practice and Remedies Code contains the following provision:

---

**7.** The four-year state of limitations applies to all fraud claims. *Williams v. Khalaf,* 802 S.W.2d 651 (Tex.1990).

(a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

(b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.069 (Vernon 1986).

Under the undisputed facts, the four-year statute of limitations had run against the Smallwoods before they filed their cross-claim. Furthermore, they did not revive their claim as allowed by Section 16.-069(b) of the Texas Civil Practice and Remedies Code by filing their counterclaim or cross-claim within thirty days after the suit was filed against them. This provision, however, does not bar matters of defense.

If the claim is of an intrinsically defensive nature, which, if given effect, will operate as an abatement either wholly or partially of the amount claimed, the statute of limitations does not apply. *Morriss-Buick Co. v. Davis*, 127 Tex. 41, 91 S.W.2d 313 (1936). A party to a note can assert any defenses arising out of the sale in financing that would entitle them to offset against, or cancellation of, the remaining balance. *Cooper v. RepublicBank Garland*, 696 S.W.2d 629 (Tex.App.—Dallas 1985, no writ). Under the Uniform Commercial Code, the defenses of want or failure of consideration are allowed to a promissory note. TEX.BUS. & COM.CODE ANN. § 3.306 (Vernon 1968).

The partial failure of consideration is a permissible defense, but applies only to the damages brought about by the misrepresentation. The cross-action for funds taken by R.C. Singer was a totally separate transaction. The difference between the book value represented to the Smallwoods of $344,978 and the actual book value of $167,813 is $177,165. This far exceeds the $61,715 principal, $47,335.40 interest, and $10,905 attorney's fees obtained by Singer,

and therefore it fully offsets this indebtedness.

R.C. Singer's work for the corporation was separate and apart from the contract to purchase the corporate stock and could not be considered as a defensive offset after the statute of limitations had run. The undisputed evidence shows that Singer did not conceal his expenditures. The amounts in question were paid by corporate checks, cosigned by the corporate bookkeeper, with stubs in the corporate checkbook showing the payee, the amount and purpose. J. Porter Smallwood testified that all the corporate records were turned over to him. The Smallwoods complain that they are not accountants and relied upon the integrity of Singer and the corporate bookkeeper. However, the information in the corporate records was sufficient to put the Smallwoods on notice about these expenditures as a matter of law, and because they knew or should have known more than four years before filing their cross-action, this cross-action is barred by the four-year statute of limitations.

Because our ruling on these points of error is dispositive of the case, we do not reach the other points. The judgment of the trial court is reversed to the extent that it awarded a money judgment against the Smallwoods. Judgment is rendered that Singer take nothing by this cause of action.