ARROYO SHRIMP FARM, INC., Chi–Ming Tao and U.S.A. Shrimp Farm Development, Inc. and Wang Hui–Chi A/K/A Michelle Huei Zei Wong, Appellants,

v.

HUNG SHRIMP FARM, INC. and Ping–Kung Hung, Appellees.

No. 13–94–344–CV.

Court of Appeals of Texas, Corpus Christi.

June 27, 1996.

Rehearing Overruled July 25, 1996.

Clinard J. Hanby, Woodlands, Juan A. Guerra, Raymondville, for appellant.

Charles A. Carlson, III, Harlingen, William M. Mills, McAllen, for appellee.

Before SEERDEN, C.J., and DORSEY and HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

Ping-Kung Hung, a citizen and resident of Taiwan, Republic of China, and his company, Hung Shrimp Farm, Inc. ("Hung"), sued Chi–Ming Tao, an American citizen, and his companies, Arroyo Shrimp Farm, Inc., and U.S.A. Shrimp Farm Development, Inc. ("Tao"), for fraud in the sale of land in Willacy County, Texas. The intended purpose of the purchase was to install and operate commercial shrimp farms. The case was tried to a jury, which found that Tao had defrauded Hung and awarded Hung approximately $11.5 million in actual damages and an additional $10.5 million in exemplary damages. Tao appeals with nine points of error.

### Sufficiency of the Evidence

Tao complains in his first two points of error that the evidence is legally and factually insufficient to support the jury's verdict of fraud. He raises the same complaint about the actual and punitive damage awards in his fifth, sixth, seventh, and eighth points of error. We hold these points of error were not preserved in the trial court and are waived on appeal, and thus we overrule them.

A complaint that evidence is insufficient must be raised in the trial court before one may complain of it on appeal. *See* TEX. R.APP. P. 52(a). To preserve a legal sufficiency or "no evidence" complaint for appeal

from a jury trial, a party must use one of the following methods: (1) a motion for instructed verdict, (2) an objection to the submission of the issue to the jury, (3) a motion to disregard the jury's answer, (4) a motion for judgment *non obstante veredicto,* or (5) a motion for new trial specifically raising the complaint. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 220 (Tex.1992); *Regan v. Lee,* 879 S.W.2d 133, 135 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Villalpando v. De La Garza,* 793 S.W.2d 274, 277 (Tex.App.—Corpus Christi 1990, no writ). A party complaining of factual insufficiency of the evidence to support a jury finding or of the excessiveness of the damage award must raise the complaint first in a motion for new trial in order to complain of it on appeal. TEX.R. CIV. P. 324(b)(2), (4); *Cecil v. Smith,* 804 S.W.2d 509, 510 (Tex.1991).

■ A motion for new trial can preserve both factual and legal insufficiency points for appeal, and Tao argues that his motion for new trial does so with respect to the findings of fraud and damages. Tao's motion for new trial in its entirety follows:

### I.

Defendants bring this motion pursuant to Rule 320 and 324 of the Texas Rules of Civil Procedure. It is the opinion and belief of Defendants that the final judgment signed on or about the 20th of January, 1994, should be set aside for good cause. Defendants would show the Court that this rule authorizes the Court in all fairness due to the damages that were awarded are manifest[ly] too large. In the history of all the South Texas counties, never had such an amount ever been awarded.

### II.

Defendants complain, by way of this their Motion For New Trial, of the conduct of the attorneys involved first as their attorneys and then the attorneys exchanging clients and ultimately their opposing counsel. If the Court would take notice of the official organ of the State Bar of Texas, *The Texas Bar Journal,* volume 57, no. 2, February 1994 issue, on p. 200, undoubtedly there is concern as to any attorney trying to serve two (2) masters.

The pertinent areas [in] such an article are the following:

### Conclusion

In order to adequately safeguard those confidences, the firm must withdraw from representing any of the parties.

Therefore, such conduct may not have been abrogated by mere disclosures. The only way to attempt to cure such gross misconduct of the attorneys involved, is for this Court to grant a new trial.

### III.

Defendants would show that in this case at bar, all attorneys for the parties were also players in the events that lead to the alleged causes of action, the subject matter of this lawsuit. Defendants hereby invoke the mandates of Texas Disciplinary Rules of Professional Conduct, Rule 3.08 which in its pertinent parts states the following:

### LAWYER AS WITNESS

(a) A lawyer shall not accept or continue employment in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered [sic] in opposition to the testimony;

(b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the lawyer believes that the lawyer will be compelled to furnish[ ] testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure.

(c) Without the client's informed consent, a lawyer may not act as advocate in an adjudicatory proceeding in which an-

other lawyer [in the] lawyer's firm is prohibited by paragraphs (a) or (b) from serving as advocate. If the lawyer to be called as a witness could not [also serve] as an advocate under this Rule, that lawyer shall not take an active role before the tribunal in the presentation of the matter.

## IV.

Defendants would show the Court that fraud was never committed. Defendant's defense never included an independent expert witness on the value of the land sold. The obvious rationale for not having obtained one is the collusion between all attorneys in this case.

Defend[ants] would show the Court, through expert testimony that the land sold was not at all excessive and was only the net reasonable value of the land. Therefore, as a matter of law, if indeed, by a stretch of imagination, there was a stat[e]ment which would qualify as fraudulent, there were no damages. Damages is an element of this tort, therefore, if none, there could not have been fraud.

## V.

This case represents the sad states of affairs among the legal field. There is a series of lawyers who contracted each other to represent both sides. This coupled with the ineffectiveness of counsel to bring in evidence to show the lack of facts proffered in proving the causes of action alleged.

The lack of expert testimony, the lack of having placed opposing counsel as witnesses, the lack of the amounts of monies paid for each acre from Defendant to Plaintiff's attorneys, is just a small accounting of the abuses exerted on Defendants.

Therefore, the only solution is to have a new trial ordered by this Honorable Court.

## VI.

Defendants would show the Court that a corollary issue was brought about in order to divert the attention from the true and correct facts. This issue was the one that Defendants had not given clear title. One, the full price had not been paid. And second, if Defendants had deficient title it is because Plaintiff's attorneys had extended a deficient title.

Therefore, it is a miscarriage of justice to allow this verdict to stand.

WHEREFORE PREMISES CONSIDERED, Defendants pray that a hearing be held and they be allowed to present evidence that their previous attorney did not want to present. Defendants pray that this motion be granted and that a new trial be ordered.

Tao's motion [1] says "fraud was never committed" and "there were no damages," and he argues here that that is the equivalent of saying "there is no evidence of fraud or damages." However, in the context of the motion presented to the trial judge, Tao complains of collusion among the trial lawyers, argues that that collusion is the reason he presented no expert evidence on the value of the land, and insists that he will do so at the next trial. His complaints in the motion for new trial are an appeal to the equitable powers of the court to do justice, but nowhere does Tao indicate why the evidence introduced at trial is inadequate to support the verdict, or constitutes no evidence.

■ In order to preserve an insufficient evidence point for review, the motion for new trial must specifically point out the deficiencies in a manner that adequately apprises the trial judge of those deficiencies. As the Texas Rules of Civil Procedure require, a point in a motion for new trial "shall briefly refer to that part of the ruling of the court ... in such a way that the objection can be clearly

---

1. Subsequent to filing this motion for new trial, appellants sought to file an out-of-time amended motion for new trial, but the trial court denied leave to file the amended motion. Supplemental motions for new trial, filed more than thirty days after the judgment was signed, are a nullity.

Tex.R. Civ. P. 329b(b); *Davis v. Mathis*, 846 S.W.2d 84, 90 (Tex.App.—Dallas 1992, no writ); *Equinox Enterprises v. Associated Media*, 730 S.W.2d 872, 875 (Tex.App.—Dallas 1987, no writ).

identified and understood by the court." Tex.R. Civ. P. 321. Additionally, the grounds supporting an objection made during trial must conform with the argument supporting the corresponding point of error on appeal. *Borden, Inc. v. Guerra,* 860 S.W.2d 515, 525 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.); *Exxon Corp. v. Allsup,* 808 S.W.2d 648, 655 (Tex.App.—Corpus Christi 1991, writ denied). An objection made during trial which is not the same as an argument urged on appeal presents nothing for appellate review. *Borden,* 860 S.W.2d at 525. Tao's motion for new trial argued that, due to the collusion of the trial lawyers, he should be given a new trial. It does not state or imply, however, that the evidence is legally or factually insufficient to support the jury's findings of fraud or their award of damages. We hold that Tao's motion for new trial failed to preserve either his legal sufficiency or his factual sufficiency arguments for our review.

Since legal sufficiency or "no evidence" points can be preserved through other motions in the trial court, we examine the other motions filed by Tao to determine if they preserved the "no evidence" argument.

▮ Tao made an oral motion for instructed verdict at the close of Hung's case, but proceeded to present evidence in his defense after the motion was denied. Should a movant offer additional evidence after his motion is denied, he thereby waives the motion. *Humes v. Hallmark,* 895 S.W.2d 475, 477 (Tex.App.—Austin 1995, no writ); *Hydro–Line Mfg. Co. v. Pulido,* 674 S.W.2d 382, 386 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Since Tao did not re-urge the motion at the close of evidence, the motion was waived.

▮ Tao filed a "Motion to Withdraw Case from Jury and Render Judgment" at the close of all evidence. That motion sought a directed verdict on the grounds of *res judicata,* collateral estoppel, judicial admissions, waiver, estoppel, and ratification. None of these grounds argued that the evidence was legally insufficient to support a

finding of fraud or of damages, and so did not preserve Tao's legal sufficiency arguments.

Tao objected to various portions of the jury charge, but these objections did not raise legal sufficiency arguments, and therefore did not preserve such arguments for our review. Finally, Tao did not file a motion for judgment *non obstante veredicto* or a motion to disregard the jury's answer to a vital fact issue. Tao failed to preserve his legal and factual sufficiency arguments for our review. Accordingly, we overrule points of error one, two, five, six, seven, and eight.

### *Waiver and Ratification*

By his third point of error, Tao argues that the trial court erred in denying his motion for directed verdict because waiver and ratification were established as a matter of law. In his "Motion to Withdraw Case from Jury and Render Judgment," Tao argued that Hung assigned the contract for sale of the land to his company, Hung Shrimp Farm, Inc., and that such assignment amounted to a bar or waiver of his fraud claim as a matter of law. The motion also argued that "[t]he evidence before the Court at this point in the trial conclusively proves all facts necessary to establish the defense of ratification."[2] Tao argued that, since Hung assigned the contract for sale of the land to Hung Shrimp Farm *after* any alleged misrepresentations by Tao were made, and since Hung had full knowledge of the alleged misrepresentations at the time he assigned the contract, he effectively accepted the conditions of the contract and waived any fraud claims he might have had as a result of the misrepresentations. Tao cited *Russell v. French & Associates, Inc.,* 709 S.W.2d 312, 317 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), in his motion as authority for this argument.

On appeal, Tao notes that, in order to prove ratification or waiver, he must show that Hung, after obtaining full knowledge of the fraud, either (1) continued to accept ben-

---

2. Tao's oral motion for directed verdict similarly asserted that "the evidence presented by plaintiffs has conclusively established ratification by the plaintiffs of the 'E' and 'F' transaction ..."

and "that the evidence conclusively establishes a waiver of the—any right to complain about the 'E' and 'F' transaction."

efits under the transaction or (2) conducted himself so as to recognize the transaction as binding. *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 699 (Tex.App.—Dallas 1992, writ denied); *see Spangler v. Jones*, 797 S.W.2d 125, 131 (Tex.App.—Dallas 1990, writ denied). Tao also notes that ratification or waiver of fraud has been found where a plaintiff undertook to investigate a matter himself and was able to investigate without hinderance from the defendant. *Laughlin v. FDIC*, 657 S.W.2d 477, 483 (Tex.App.—Tyler 1983, no writ); *Mann v. Rugel*, 228 S.W.2d 585, 587 (Tex.Civ.App.—Dallas 1950, no writ).

When they first entered negotiations for the purchase of land, Hung and Tao signed a "Letter of Intention," which recited the terms of the sale, including a purchase price of $1500 per acre and an additional $1000 per acre for a "Shellfish Culture License."[3] Hung claimed that Tao told him the license was costly and difficult for foreign nationals to obtain. Hung later learned that the license, for which he had paid a total of $2.6 million, was non-transferable and therefore worthless to him. He also learned that foreign nationals could obtain the license for themselves, and that the license cost only $50.

Tao argues that the Letter of Intent provided for investigation into the appropriate shrimp farming licenses by Hung, and that he had three months in which to conduct this investigation before the contract for sale was signed. The fact that Hung signed the contract after this investigation period, Tao claims, amounted to a waiver on his part of any claims of fraud regarding the license.

Hung also based his fraud allegations on Tao's alleged representation that a water pumping station located on Tao's property fronting the Arroyo Colorado[4] could supply sufficient water to the land Hung purchased (which had no direct access to the Arroyo Colorado) to allow him to operate a shrimp farm. After purchasing the land, Hung learned that the pumping station could not supply adequate water. He therefore purchased land from Tao that fronted the Arroyo Colorado, for $4600 per acre, and constructed a new pumping station in an attempt to save his investment. He also traded a portion of his original purchase for a third tract of land that connected the waterfront property with the originally purchased property, to facilitate transporting the water back to the shrimp farm ponds he intended to construct.

Tao argues that Hung was already aware of the claimed misrepresentations concerning the capacity of the original water pumping station when he purchased the waterfront acreage and the land connecting the waterfront tract with the original tract. He notes that Hung continued to make payments on the initial contract and exchanged a portion of the land covered under the original contract for new land even after becoming aware of the pump station misrepresentations. Finally, Tao argues that even after Hung claimed he learned of the misrepresentation regarding the shrimp license, he continued to make payments under the contract, assigned all the contracts to his company, filed an answer to a suit in Federal Court admitting continuing indebtedness to Tao, and attempted to get title to the land from Tao. Tao argues that these actions by Hung show that he continued to accept benefits under the transaction and conducted himself so as to recognize the transaction as binding.

Hung responds that he was not even aware that he had a claim for fraud against Tao until December, 1992, shortly before the suit was filed, and that he never had any intention of waiving his rights to such action.

3. The original "Letter of Intention" and "Contract for Sale" were drafted in Chinese and later translated into English. The actual terms of the Chinese letter and the contract are disputed, with Tao claiming the $1000 per acre was designated for commissions and finders fees for middlemen, rather than solely for the Shellfish Culture License. At trial, the plaintiff's translator testified that an addendum to the Chinese-language Contract for Sale stated that the $1000 per acre was for "rights and interest fee." Tao testified that the literal translation of the Chinese is "the man who holds the hog," a Chinese figure of speech meaning "middleman."

4. The Arroyo Colorado is a body of water that opens and flows into the Laguna Madre, which is separated from the Gulf of Mexico by Padre Island.

Hung argues that the defense of waiver requires a showing that the waiving party both knew that he had a right to the action and that he intended to relinquish that right. Hung cites for support *Sun Exploration & Prod. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987), *Trinity Nat. Life & Accident Ins. Co. v. Bomar*, 572 S.W.2d 790 (Tex.Civ.App.—Tyler 1978), *rev'd on other grounds*, 579 S.W.2d 464 (Tex.1979), and *Braugh v. Phillips*, 557 S.W.2d 155 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Hung also notes that making payments in an effort to obtain title to land does not establish that he intended to waive his right to sue Tao for fraud, citing *Smallwood v. Singer*, 823 S.W.2d 319 (Tex.App.—Texarkana 1991, no writ).

■■■■ In order to prove the ratification defense, Tao had to prove that Hung (1) had full knowledge of the fraudulent acts or breach at the time of ratification and (2) nevertheless intentionally chose to ratify the contract in spite of the alleged fraud. *Texacadian Fuels, Inc. v. Lone Star Energy Storage, Inc.*, 896 S.W.2d 233, 237 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *LSR Joint Venture*, 837 S.W.2d at 699; *see also Spangler*, 797 S.W.2d at 131; *Wise v. Pena*, 552 S.W.2d 196, 200 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd). The burden is on Tao to prove that Hung had full knowledge of the fraud and to prove that he made a voluntary, intentional choice to ratify the transaction in light of that knowledge. *Spangler*, 797 S.W.2d at 131. If the evidence of ratification is controverted, the question is for the trier of fact. *Id.*

The "Letter of Intention" provided that

Upon obtaining all information deemed necessary and satisfactory to the undersigned regarding Shellfish Culture License (No. 204–00053–0), the undersigned agrees to pay U.S. $2,643,900 (1,000 per acre) for the purchase of the License. You, the owner of the License, is [sic] obliged to disclose all information upon the request by the undersigned.

Hung testified that, while the letter of intent gave him the right to research the license, he did not have the ability to do so since he does not speak English well, he lives in Taiwan, and he does not understand "the legalities of this license." He stated that he trusted Tao regarding the license, and, although there are lawyers in Texas who could have researched the licensing requirements for him, he did not know any at the time. He acknowledged that he never asked to see a copy of the license or checked with any of the regulatory authorities that oversee such licenses.

■■■■ Tao's reliance on *Laughlin v. FDIC* and *Mann v. Rugel* is misplaced. Both of these cases stand for the proposition that, once a party has done some independent investigation of the facts, he can not thereafter complain that he relied on the misrepresentations of others regarding those same facts. As stated in *Mann*,

Where a party who claims to have been defrauded had the means to have discovered the fraud, if any existed, *and undertakes to investigate for himself, and does make such investigation as he deems necessary*, and is not hindered or prevented from doing so by any act of the other party, it must be held as a matter of law that he has knowledge of everything that a proper investigation would disclose, and hence would not be justified in acting on fraudulent representations, if any were made to him, merely because they were made to him.

*Mann v. Rugel*, 228 S.W.2d 585, 587 (Tex. Civ.App.—Dallas 1950, no writ) (emphasis added). In *Laughlin*, the court determined that the plaintiff had relied upon his own information regarding the value of certain stock, rather than on the representations of others. As the court stated, "Texas courts have consistently held that *when a person makes his own investigation of the facts*, he cannot, as a matter of law, be said to have relied upon the misrepresentations of others." *Laughlin*, 657 S.W.2d at 483 (emphasis added) (citations omitted).

■■■■ In the present case, Hung made no independent inquiries into the shrimp license he purchased. A person must exercise reasonable ordinary care for the protection of his own interests and discover the existence of fraud if he has knowledge of facts that

would put a reasonably prudent person on inquiry. *Id.* at 482 (citing *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962)). The court in *Laughlin* determined that the unusual nature of the transaction at issue put Laughlin on notice and should have required him to make further investigation. *Laughlin,* 657 S.W.2d at 482. In the present case, however, there is no evidence that Hung was aware of anything which would have put him on notice that he should make inquiry into the shrimp farming license, rather than simply relying on Tao's representations that the license was transferable and difficult for foreign nationals to obtain.[5] The fact that the letter of intent allowed Hung to obtain information he "deemed necessary and satisfactory" did not place any affirmative burden of investigation on him regarding the license. The fact that he signed the contract for sale some three months later, therefore, did not amount to a waiver of his fraud claims.

■■■ Furthermore, the fact that Hung assigned the contract to Hung Shrimp Farm and that he purchased additional land and continued to make payments on the contracts does not show that he had an affirmative intent to ratify the contracts or to waive his claims for fraud. Hung testified that he did not even know he had an action for fraud available to him until he conferred with an American attorney in late 1992. Shortly after learning that he had a claim for fraud, Hung sued Tao. He testified that he purchased the new land and constructed a pump station on that land in a futile effort to save his original investment. This action does not show an intent on his part to waive the fraud claim. Finally, continuing with the payments due under the contract does not show that Hung intended to waive his claims or ratify the contract. Acts done in affirmance of the original contract do not necessarily amount to a waiver of the right to sue for fraud. *Andrews v. Powell,* 242 S.W.2d 656, 661 (Tex. Civ.App.—Texarkana 1951, no writ). Tao

did not show conclusively that Hung intended to waive his claims and ratify the contract in spite of his knowledge of the alleged misrepresentations. As the evidence regarding waiver and ratification was in dispute, it was appropriately a question for the fact finder. *Spangler,* 797 S.W.2d at 131. The trial court did not abuse its discretion in denying the motion for directed verdict on these grounds.

■■■ Tao argues in the alternative that the failure of the jury to find waiver and ratification was against the great weight of the evidence. In order to attack a jury finding on appeal for being against the overwhelming weight of the evidence, a party must first raise the point of error in a motion for new trial. TEX.R. CIV. P. 324(b)(3). Tao's motion for new trial did not argue that the jury's failure to find waiver and ratification was against the great weight of the evidence. Point of error three is overruled.

### Trial Amendment

By his fourth point of error, Tao claims that the trial court erred in denying leave to file a trial amendment raising the defenses of *res judicata,* collateral estoppel, and judicial admission and in denying his motion for directed verdict on these grounds.

Tao and Hung were parties to a garnishment suit in Federal Court prior to the suit at bar. In the federal case, certain third parties with claims against Tao sued Hung seeking garnishment of money he owed Tao pursuant to the sale of land. In that case, Hung admitted indebtedness to Tao under the Contract for Sale in the amount of $2,365,850. The federal court issued orders denying the garnishment.

Tao sought a trial amendment at the close of evidence in the trial, but before the jury charge was read, in order to raise the issues of *res judicata,* collateral estoppel, and judicial admission based on the federal proceedings. Hung's counsel argued against the tri-

---

**5.** Tao argues that any representations he might have made about the shrimp farming license were non-actionable opinions of law. Although we held that this argument was waived, we would note that representations concerning the law of foreign states or countries, which Tao's representations about Texas law certainly would

be to Hung, are considered to be representations of fact, and therefore can support a fraud action. *Askew v. Smith,* 246 S.W.2d 920, 922–23 (Tex. Civ.App.—Dallas 1952, no writ); 41 TEX. JUR.3D, *Fraud and Deceit* § 19 (1985); 37 AM JUR.2D, *Fraud and Deceit* § 80 (1968); 37 C.J.S., *Fraud* § 55 (1943).

al amendment, complaining that it would work an injustice to allow the trial amendment "at the very end of this lengthy trial ... and for the first time, with absolutely no notice to us." The trial court denied the motion.

■■■ A trial court must allow a trial amendment unless the opposing party presents evidence of surprise or prejudice, or the amendment asserts a new cause of action or defense, and thus is facially prejudicial. *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656 (Tex.1994). While Tao's desired trial amendment did raise a new defense, Tao argues that such trial amendments should be allowed ·anyway when the new defense is purely legal in nature and does. not require any factual development during discovery. Tao cites *Vermillion v. Haynes*, 147 Tex. 359, 215 S.W.2d 605, 609 (1948), where the Court determined that it was an abuse of discretion for the trial court to refuse a trial amendment raising the defense of limitations. Tao argues that the defenses he raised would have required no further fact development, and that Hung did not present any evidence of prejudice that would have been caused had the amendment been allowed.

Hung responds to this point of error by noting that the defenses in Tao's desired trial amendment were entirely new and offered only after the close of evidence on both sides. Hung argues that he had no prior notice of these defenses and indicated as much to the trial court. Hung claimed that allowing the trial amendment would subject him to unfair surprise. Hung also notes that in Tao's last filed pleading, filed just seven days before trial began, Tao did not raise these defenses, although he was aware of the facts upon which he sought the trial amendment well before that time. Hung alleges that the desired trial amendment amounted to an ambush, and that the trial court does not err in disallowing a trial amendment when the record reflects a lack of diligence on the part of the requesting party. *Sanchez v. Matthews*, 636 S.W.2d 455 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.).

■■■ Rule 94 requires that affirmative defenses such as estoppel, *res judicata* and "any other matter constituting an avoidance or affirmative defense" be pleaded. TEX.R. CIV. P. 94. A trial court has no discretion to deny a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense and is thus prejudicial on its face and the opposing party objects. *See* TEX.R. CIV. P. 66; *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex.1992); *White v. Sullins*, 917 S.W.2d 158, 161 (Tex.App.—Beaumont 1996, writ requested). If the amendment is not mandatory, the court's decision to allow or deny the trial amendment may be reversed only if it is a clear abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex.1980). A party opposing a trial amendment does not have to prove prejudice or surprise if the amendment is a substantive one which changes the nature of the trial. *Chapin & Chapin*, 844 S.W.2d at 665. A newly plead affirmative defense substantially changes the nature of a trial. *White*, 917 S.W.2d at 161.

■■■ Tao was aware of the facts that led him to seek the trial amendment well before the trial began, yet he chose to wait until the close of evidence to attempt to raise the affirmative defenses. Regardless of whether or not Hung presented sufficient evidence in the trial court that the amendment would work a surprise on him, the amendment raised a new affirmative defense, and was therefore prejudicial on its face. *Id.* The trial court therefore had discretion in allowing or disallowing the amendment. In this case, Hung noted for the trial court that he was surprised by the attempted trial amendment, and that it would be "a great injustice for them at the very end of this lengthy trial, to ask for a trial amendment, and for the first time, with absolutely no notice to us." Under the circumstances of this case, we cannot say that the trial court abused its discretion in disallowing the trial amendment at that late point in the trial. Tao's fourth point of error is overruled.

*Expert's Testimony*

In his ninth and final point of error, Tao complains of the trial court's denial of his

motion to strike the testimony of Mr. Robin Moore, a real estate appraiser called by Hung to testify regarding the value of the land. Tao argues that Hung provided him with one set of "comparable sales" figures during discovery, but that Mr. Moore testified concerning a completely different set of comparable sales at trial. Tao claims that this change was material and, since Mr. Moore's testimony was the only testimony that might have supported the amount of damages awarded by the jury, the testimony was harmful and should have been excluded.

Hung responds that the trial court did not abuse its discretion in denying Tao's motion to strike Mr. Moore's testimony. Mr. Moore's ultimate testimony regarding the value of the land did not change substantially from the amounts noted in Hung's answers to Tao's interrogatories,[6] so Hung argues that there was no surprise to Tao. Hung argues that the change from one set of comparable sales data to another (farm land to ranch land) was an inadvertent mistake on Mr. Moore's part, did not come to Hung's counsel's attention until Mr. Moore took the witness stand, and that Tao's counsel was given ample time to examine the new data and conducted a very thorough cross-examination of Mr. Moore. Hung also notes that the evidence of comparable sales was denied admission.

■ We review the trial court's denial of the motion to strike Mr. Moore's testimony for an abuse of discretion. In such a review, we look to whether the trial court made its ruling without reference to any guiding rule or principle. *McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995).

■ Rule of Civil Procedure 215(5) provides that:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, *un-*

*less the trial court finds that good cause sufficient to require admission exists.* The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

TEX.R. CIV. P. 215(5) (emphasis added). In determining whether good cause exists, the court may look at: 1) inadvertence of counsel, 2) lack of surprise, unfairness or ambush, 3) uniqueness of excluded evidence, and 4) whether or not the witness was deposed. *Patton v. Saint Joseph's Hosp.,* 887 S.W.2d 233, 239 (Tex.App.—Fort Worth 1994, writ denied) (citing *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 915 (Tex.1992)).

■ In the present case, these factors all favor the trial court's decision to allow Mr. Moore to testify. Mr. Moore testified that he mistakenly listed ranch land sales rather than farm land sales when he provided the answers to Tao's interrogatories. He stated that this was his mistake, not that of the attorneys. Additionally, Mr. Moore's ultimate valuations did not change significantly from his interrogatory responses to his trial testimony: his valuation changed from $475—$500 per acre to $450—$500 per acre. His valuation testimony was unique, in that he was the only expert to testify regarding the value of the land. Finally, although Mr. Moore was designated in Hung's discovery responses, Tao did not depose him. Under these circumstances, we cannot say that the trial court abused its discretion in overruling Tao's motion to strike Mr. Moore's testimony. Point of error nine is overruled.

The judgment of the trial court is AFFIRMED.

■

---

6. Mr. Moore valued the land at $475 to $500 per acre in the appellees' answers to interrogatories.

At trial, Mr. Moore testified that the land had a value of $450 to $500 per acre.